Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN BUSHANSKY, Individually and On Behalf of All Others Similarly Situated,<br><br>         Plaintiff,<br><br>   v.<br><br>WESCO AIRCRAFT HOLDINGS, INC., RANDY J. SNYDER, DAYNE A. BAIRD, THOMAS M. BANCROFT III, PAUL E. FULCHINO, JAY L. HABERLAND, SCOTT E. KUECHLE, ADAM J. PALMER, ROBERT D. PAULSON, JENNIFER M. POLLINO, TODD RENEHAN, AND NORTON A. SCHWARTZ,<br><br>         Defendants. | Case No. _____<br><br><u>CLASS ACTION</u><br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Stephen Bushansky ("Plaintiff"), by his undersigned attorneys, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.      This is a class action brought by Plaintiff on behalf of himself and the public stockholders of Wesco Aircraft Holdings, Inc. ("Wesco" or the "Company") against Wesco and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Wesco will be acquired by an affiliate of Platinum Equity Advisors, LLC ("Platinum Equity") through its subsidiaries, Wolverine Intermediate Holding II Corporation ("Parent") and Parent's wholly owned subsidiary, Wolverine Merger Corporation ("Merger Sub") (the "Proposed Transaction").

2.      On August 9, 2019, Wesco issued a press release announcing it had entered into an Agreement and Plan of Merger dated August 8, 2019 (the "Merger Agreement") to be acquired by an affiliate of Platinum Equity. Pursuant to the terms of the Merger Agreement, Wesco stockholders will be entitled to receive $11.05 per

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

share in cash for each Wesco share they own (the "Merger Consideration").  The Proposed Transaction is valued at approximately $1.9 billion.

3.      On September 13, 2019, defendants filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Wesco stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's financial projections; (ii) the background process leading up to the Proposed Transaction; (iii) the valuation analyses performed by Wesco's financial advisors, Morgan Stanley & Co. LLC ("Morgan Stanley") and J.P. Morgan Securities LLC ("J.P. Morgan," and together with Morgan Stanley, the "Financial Advisors") regarding the Proposed Transaction; and (iv) potential conflicts of interest faced by the Company's Financial Advisors.  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In short, unless remedied, Wesco's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.     This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Wesco's common stock trades on the New York Stock Exchange, which is headquartered in this District, rendering venue in this District appropriate.

## PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Wesco.

9.     Defendant Wesco is a Delaware corporation and maintains its principal executive offices at 24911 Avenue Stanford, Valencia, California 91355.  Wesco's common stock is traded on the New York Stock Exchange under the ticker symbol

"WAIR."

10.     Defendant Randy J. Snyder ("Snyder") has been Chairman of the Board since 2006 and previously served as President and Chief Executive Officer ("CEO") of the Company from 1977 to December 2014.

11.     Defendant Dayne A. Baird ("Baird") has been a director of the Company since 2010.

12.     Defendant Thomas M. Bancroft III ("Bancroft") has been a director of the Company since February 2015.

13.     Defendant Paul E. Fulchino ("Fulchino") has been a director of the Company since 2008.

14.     Defendant Jay L. Haberland ("Haberland") has been a director of the Company since 2011.

15.     Defendant Scott E. Kuechle ("Kuechle") has been a director of the Company since 2012.

16.     Defendant Adam J. Palmer ("Palmer") has been a director of the Company since 2006.

17.     Defendant Robert D. Paulson ("Paulson") has been a director of the Company since 2006.

18.     Defendant Jennifer M. Pollino ("Pollino") has been a director of the Company since December 2014.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

19.     Defendant Todd Renehan ("Renehan") has been CEO and a director of the Company since 2017.  Defendant Renehan previously served as Executive Vice President and Chief Commercial Officer of the Company from 2014 to 2017.

20.     Defendant Norton A. Schwartz ("Schwartz") has been a director of the Company since 2013.

21.     Defendants identified in paragraphs 10-20 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

22.     Platinum Equity is a global mergers, acquisitions and operations firm that specializes in mergers, acquisitions, and operations of companies by providing products, services and solutions.  Platinum Equity is headquartered in Los Angeles, California, with offices in Boston, Greenwich, New York, London, and Singapore.

23.     Parent is a Delaware corporation and indirect subsidiary of funds managed and advised by Platinum Equity.

24.     Merger Sub is a Delaware corporation and a wholly-owned subsidiary of Parent.

## CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Wesco common stock (the "Class").  Excluded from the Class are defendants and

6

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

26.     Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

27.     The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  As of September 9, 2019, there were 99,749,063 shares of Company common stock outstanding.  All members of the Class may be identified from records maintained by Wesco or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

28.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)     Whether the Individual Defendants have violated Section 14(a) of the Exchange Act;

(b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

29.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.  Plaintiff has retained competent counsel experienced in litigation of this nature.

30.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

31.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### Company Background and the Proposed Transaction

32.     Wesco was founded in 1953 and now serves over 7,000 customers, primarily in the commercial, military and general aviation sectors.  Wesco is a distributor and provider of supply chain management services to the global aerospace industry, including the leading original equipment manufacturers and their subcontractors, through which the Company supports nearly all major Western aircraft programs.

33.     The Company's services include traditional distribution, management

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

of supplier relationships, quality assurance, kitting, just-in-time delivery, chemical management services, third-party logistics or fourth-party logistics programs, and point-of-use inventory management. Wesco supplies more than 563,000 active stock-keeping units, including C-class hardware, chemicals, electronic components, bearings, tools and machined parts.

34.     On January 31, 2019, Wesco announced its first quarter 2019 financial results. The Company reported net sales of $395.3 million, 8.9% higher than net sales in the first quarter of 2018, gross profit of $98.3 million, compared to $94.4 million in the first quarter of 2018, and adjusted net income of $16.6 million, compared to $14.5 million in the first quarter of 2018. Defendant Renehan commented on the quarter's results, stating:

> Fiscal 2019 first quarter results reflect solid top-line growth in all products and services and ongoing execution of our Wesco 2020 initiatives. Our Americas business, which represented 81 percent of total net sales, performed very well in the first quarter, with strong sales growth and improved operating margin. This was partially offset by one-time costs of $8 million supporting Wesco 2020 execution and weaker results in our EMEA business. Based upon our strong execution in the Americas, I'm confident in our ability to address the challenges in EMEA and improve its profit generation by the end of the year.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

35.   On May 2, 2019, Wesco announced its second quarter 2019 financial results.  For the quarter, net sales were $426.5 million, a 9.4% increase compared to the second quarter of 2018.  Gross profit was $108.7 million, compared to $105.7 million in the second quarter of 2018.  Adjusted net income was $23.2 million, compared to $22.2 million in the second quarter of 2018.  Defendant Renehan commented on the financial results, stating:

> Financial results in the fiscal 2019 second quarter reflect continued improvement in most areas of the business. Sales were robust across all major product categories, as we took advantage of a growing market. Consistent with the previous quarter, we had execution challenges in EMEA; we launched a series of key initiatives in the region and remain confident in our ability to improve EMEA's performance. Net income declined in the second quarter, primarily due to temporary costs related to Wesco 2020 and EMEA challenges; adjusted EBITDA increased year-over-year, reflecting strong sales gains in the Americas. In addition, our continued focus on inventory management led to a significant increase in cash generation in the second quarter.

36.   On August 9, 2019, Wesco announced its financial results for the third quarter of 2019, including net sales of $442.4 million, a 7.8% increase compared to the third quarter of 2018, gross profit of $105.9 million, compared to $104.2 million

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

in the third quarter of 2018, and adjusted net income of $22.7 million, compared to $20.1 million in the third quarter of 2018.  Defendant Renehan commented on the results, stating:

> Robust sales growth continued in the fiscal 2019 third quarter, primarily driven by higher sales under long-term contracts for both chemical and hardware products. This growth reflects continued strong performance in the Americas, which is our largest segment, and was achieved despite a decline in our EMEA region. Cash from operating activities increased significantly in the third quarter, primarily due to further improvements in inventory management and our continued focus on working capital.

37.     Also on August 9, 2019, Wesco issued a press release announcing the Proposed Transaction that stated, in relevant part:

> VALENCIA Calif., Aug. 09, 2019 (GLOBE NEWSWIRE) -- Wesco Holdings Inc. (NYSE: WAIR), one of the world's leading distributors and providers of comprehensive supply chain management services to the global aerospace industry, today announced that it has entered into a definitive merger agreement to be acquired by an affiliate of Platinum Equity in a transaction valued at approximately $1.9 billion.
>
> Upon closing, Wesco will be combined with Platinum Equity portfolio

11

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

company Pattonair, a provider of supply chain management services for the aerospace and defense industries based in the United Kingdom.

Under the agreement, which has been unanimously approved by Wesco's Board of Directors, Wesco shareholders would receive $11.05 per share in cash. The cash purchase price represents a premium of approximately 27.5 percent to the 90-day volume weighted average share price for the period ended May 24, 2019, the last trading day prior to media speculation regarding a potential transaction involving Wesco.

Wesco's three largest shareholders, affiliates of The Carlyle Group and Makaira Partners, as well as the Snyder Family Trusts, support the transaction and have entered into voting and support agreements to vote their shares in favor of the transaction.

"We are excited about the opportunities a combination with Pattonair will provide Wesco. This is the right transaction for our shareholders, customers and employees," said Todd Renehan, Chief Executive Officer of Wesco. "This transaction is a strong validation of our customer value proposition, and it will allow us to find new and

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

innovative ways to bring more value to customers, enhance relationships with suppliers and create additional opportunities for employees."

Wayne Hollinshead, Pattonair CEO, said, "This is great news for our company and our customers and will create new avenues for growth and expansion. Wesco is an outstanding business with an impressive track record for innovation and customer service. We are excited about the prospects of working together."

Louis Samson, Platinum Equity Partner, said, "Wesco's broad customer base and industry-leading capabilities have positioned it well to benefit from long-term trends in the aerospace and defense industry. Bringing Wesco and Pattonair together will create a truly global enterprise, benefiting the combined customer base through increased scale and access to new technologies."

**Transaction Details**

The transaction will be financed through a combination of committed

13

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

equity financing provided by affiliates of Platinum Equity Capital Partners IV, L.P., as well as debt financing that has been committed to by Bank of America Merrill Lynch.

The transaction is expected to be completed by the end of calendar 2019 and is subject to Wesco shareholder approval, regulatory clearances and other customary closing conditions.

Upon the completion of the transaction, Wesco will become a privately held company, and shares of its common stock no longer will be listed on any public market.

**Insiders' Interests in the Proposed Transaction**

38.     Wesco insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and Wesco's public stockholders.

39.     The Company's insiders stand to reap substantial financial benefits for securing the deal with Platinum Equity.  For example, defendant Renehan and the Company's other executive officers are each party to a transaction bonus letter that

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

provides for the payment of a transaction bonus in cash equal to 150% of such executive officer's base salary.  The following table sets forth the transaction bonuses the Company's executive officers stand to receive in connection with the sale of Wesco:

| Name | Transaction Bonus |
|---|---|
| Todd Renehan | $ 1,012,500 |
| Kerry Shiba | $ 750,000 |
| Alex Murray | $ 768,750 |
| Declan Grant | $ 512,250 |

40.    Additionally, pursuant to the terms of the Merger Agreement, each Company stock option, restricted stock unit, restricted share and performance share unit held by the Company's directors and executive officers will automatically vest and convert into the right to receive cash payments.  The following table sets forth the payments Company insiders stand to receive in connection with the vesting of their equity awards:

| Name | Company RSUs | Company PSUs(1) | Company Restricted Shares | Company Options (Unvested, In-the-money) | Total Value(2) |
|---|---|---|---|---|---|
| **Executive Officers** | | | | | |
| Todd Renehan | 111,100 | 221,733 | 3,765 | 57,220 | $ 3,805,237.90 |
| Kerry Shiba | 49,634 | 88,216 | 0 | 26,822 | $ 1,563,475.50 |
| Alex Murray | 71,423 | 188,689 | 3,765 | 35,762 | $ 2,969,483.85 |
| Declan Grant | 32,807 | 39,859 | 17,396 | 11,623 | $ 1,012,619.60 |
| Dan Snow(3) | 0 | 0 | 0 | 0 | $ 0 |
| | | | | | |
| **Non-Employee Directors** | | | | | |
| Randy J. Snyder | 0 | 0 | 2,245 | 0 | $ 24,807.25 |
| Thomas M. Bancroft III | 0 | 0 | 1,818 | 0 | $ 20,088.90 |
| Paul E. Fulchino | 0 | 0 | 3,546 | 0 | $ 39,183.30 |
| Jay L. Haberland | 0 | 0 | 1,863 | 0 | $ 20,586.15 |
| Scott E. Kuechle | 0 | 0 | 1,908 | 0 | $ 21,083.40 |
| Robert D. Paulson | 0 | 0 | 1,852 | 0 | $ 20,464.60 |
| Jennifer M. Pollino | 0 | 0 | 1,773 | 0 | $ 19,591.65 |
| Norton A. Schwartz | 0 | 0 | 1,751 | 0 | $ 19,348.55 |

41.    Moreover, if they are terminated in connection with the Proposed Transaction, Wesco's named executive officers stand to receive substantial cash

15

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

severance payments in the form of golden parachute compensation, as set forth in the following table:

**Golden Parachute Compensation**

| Name | Cash(1) | Equity(2) | Benefits & Perquisites(3) | Total |
|------|---------|-----------|---------------------------|-------|
| Todd Renehan | $ 3,712,500 | $ 3,805,238 | $ 73,803 | $ 7,591,541 |
| Kerry Shiba | $ 2,500,000 | $ 1,563,476 | $ 73,361 | $ 4,136,837 |
| Alex Murray | $ 2,562,500 | $ 2,969,484 | $ 78,663 | $ 5,610,647 |
| Declan Grant | $ 1,536,750 | $ 1,012,620 | $ 76,143 | $ 2,625,513 |
| Dan Snow(4) | $ 0 | $ 0 | $ 0 | $ 0 |

## The Proxy Statement Contains Numerous Material Misstatements or Omissions

42.     Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Wesco's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed voting or appraisal decision in connection with the Proposed Transaction.

43.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections; (ii) the background of the Proposed Transaction; (iii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the Company's Financial Advisors; and (iv) potential conflicts of interest of the Company's Financial Advisors.

***Material Omissions Concerning Wesco's Financial Projections***

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

44.     The Proxy Statement is materially deficient because it fails to disclose material information relating to the Company's intrinsic value and prospects going forward.

45.     In April 2019, the Board reviewed and finalized with the Company's Strategic Alternatives Committee Company management's financial projections, which were then provided to Parent and other potential bidders (the "Initial Management Projections").  Beginning on July 16, 2019, following the receipt of first round bids in the sale process and mere days before the second round bid deadline, Wesco's management created a downwardly revised set of projections (the "Updated Management Projections").  Although the Proxy Statement discloses certain projection line items for the Initial Management Projections, the Proxy Statement fails to disclose the unlevered free cash flows or the underlying line items. In addition, the Proxy Statement fails to disclose the key assumptions and sensitivities to the Initial Management Projections reviewed by Company management at the request of the Strategic Alternatives Committee beginning on July 26, 2019, and the key assumptions and risks underlying the downwardly revised Updated Management Projections, as presented to the Board by Company management on August 1, 2019.  Without these omitted projections and the related assumptions, Wesco stockholders cannot assess the eleventh hour revision to the Company's projections and whether the revision was proper or was engineered to

depress the future financial outlook of the Company to make the Merger Consideration appear more favorable.

46.     The omission of this information renders the statements in the "Certain Financial Projections" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

47.     The Proxy Statement is materially deficient because it fails to disclose material information relating to the background of the Proposed Transaction.

48.     According to the Proxy Statement, in connection with the sale process Wesco entered into non-disclosure agreements with fourteen (14) potential merger partners.  Yet, the Proxy Statement fails to disclose whether the non-disclosure agreements Wesco entered into with the fourteen (14) potential merger partners are still in effect and/or contain "don't ask, don't waive" ("DADW") standstill provisions that are presently precluding these parties from making a topping bid for the Company

49.     The disclosure of the terms of any standstill provisions in the confidentiality agreements Wesco entered into with potential merger partners is crucial to Wesco stockholders being informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

50.     The omission of this information renders the statements in the

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

"Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Financial Advisors' Financial Analyses***

51.     The Proxy Statement describes the Financial Advisors' fairness opinions and the various valuation analyses performed in support of their opinions. However, the descriptions of the Financial Advisors' fairness opinions and analyses fail to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Wesco's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on the Financial Advisors' fairness opinions in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

52.     With respect to Morgan Stanley's *Discounted Cash Flow Analysis* ("DCF"), the Proxy Statement fails to disclose: (i) the net present value of the tax benefit from the amortization of certain intangible assets for the life of such assets from fiscal fourth quarter of 2019 through 2062; (ii) the financial metric Morgan Stanley applied perpetuity growth rates to in order to derive the terminal value; (iii) the implied terminal multiples resulting from the analysis; and (iv) quantification of the inputs and assumptions underlying the discount rate range of 6.9% to 8.4%.

53.     With respect to J.P. Morgan's *DCF*, the Proxy Statement fails to disclose: (i) the net present value of the tax benefit from the amortization of certain

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

intangible assets for the life of such assets from fiscal fourth quarter of 2019 through 2062; (ii) the implied terminal value multiples resulting from the analysis; and (iii) quantification of the inputs and assumptions underlying the discount rate range of 8.25% to 9.25%.

54.     With respect to J.P. Morgan's *Value Creation Analysis*, the Proxy Statement fails to disclose the estimated present value of the Synergies (net of estimated transaction expenses) as reflected in synergy estimates Wesco's management provided to J.P. Morgan for use in connection with its analysis.

55.     When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

56.     The omission of this information renders the statements in the "Fairness Opinion of Morgan Stanley & Co. LLC" and "Fairness Opinion of J.P. Morgan Securities LLC" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Financial Advisors' Potential Conflicts of Interest***

57.     The Proxy Statement also fails to disclose the potential conflicts of interest faced by the Company's Financial Advisors.

58.     For example, the Proxy Statement sets forth:

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

> In the two years prior to the date of its opinion, Morgan Stanley or its affiliates have provided the Company with financing services and have received less than approximately $1 million in fees in connection with such services during such time. In the two years prior to the date of its opinion, Morgan Stanley or its affiliates have provided Platinum and its affiliates with financial advisory and financing services and have received aggregate fees of between $75 million to $100 million in connection with such services during such time. Morgan Stanley may seek to provide financial advisory or financing services to Parent, Platinum, Carlyle, the Company and their respective affiliates in the future and would expect to receive fees for the rendering of these services.

Proxy Statement at 64.  The Proxy Statement fails, however, to disclose any services performed by Morgan Stanley for the Company's largest stockholder, The Carlyle Group, L.P. ("Carlyle"), which owns approximately 23.4% of Wesco's common stock, in the past two years and the amount of fees received for performing services for Carlyle.  Additionally, the Proxy Statement fails to disclose the nature of the work and services performed by Morgan Stanley for Platinum and its affiliates in the past two years.

59.    Additionally, the Proxy Statement sets forth:

During the two years preceding the date of its opinion, J.P. Morgan and its affiliates have not had any material commercial or investment banking relationships with the Company or Parent. During the two years preceding the date of its opinion, J.P. Morgan and its affiliates have had commercial or investment banking relationships with The Carlyle Group, L.P. ("*Carlyle*"), for which J.P. Morgan and such affiliates have received customary compensation. Falcon Aerospace Holdings, LLC, an affiliate of Carlyle, holds approximately 23% of the outstanding shares of Wesco Aircraft common stock. The services J.P. Morgan has provided to Carlyle during such period have included acting as joint lead bookrunning manager on an offering of Carlyle equity securities in September 2017, as joint lead bookrunning manager on an offering of debt securities of a Carlyle subsidiary in September 2018, as joint lead arranger and bookrunner on a credit facility of a Carlyle subsidiary in February 2019 and as sole arranger and bookrunner on a credit facility of a Carlyle subsidiary in June 2019. In addition, during the two years preceding the date of its opinion, J.P. Morgan and its affiliates have had commercial or investment banking relationships with Carlyle portfolio companies for which J.P. Morgan and such affiliates have received customary compensation.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Such services during such period have included providing debt syndication, equity underwriting, debt underwriting and financial advisory services to Carlyle portfolio companies. During the two years preceding the date of its opinion, J.P. Morgan and its affiliates have had commercial or investment banking relationships with portfolio companies of Platinum, for which J.P. Morgan and such affiliates have received customary compensation. Parent and Merger Sub are indirect subsidiaries of funds managed and advised by Platinum. The services J.P. Morgan has provided to Platinum during such period have included providing debt syndication, debt underwriting and financial advisory services to Platinum portfolio companies. J.P. Morgan's commercial banking affiliate is an agent bank and a lender under outstanding credit facilities of Carlyle subsidiaries, Carlyle portfolio companies and Platinum portfolio companies for which it receives customary compensation or other financial benefits. In addition, J.P. Morgan and its affiliates hold, on a proprietary basis, less than 1% of the outstanding common stock of the Company and approximately 2.85% of the outstanding common units of Carlyle. During the two year period preceding the date of J.P. Morgan's opinion, J.P. Morgan received aggregate fees from the Company of approximately $50 thousand, no

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

fees from Parent and aggregate fees from Platinum of approximately $29 million. In the ordinary course of their businesses, J.P. Morgan and its affiliates may actively trade the debt and equity securities or financial instruments (including derivatives, bank loans or other obligations) of the Company, Carlyle and Platinum for their own account or for the accounts of customers and, accordingly, J.P. Morgan may at any time hold long or short positions in such securities or other financial instruments.

*Id.* at 71-72.  The Proxy Statement fails, however, to disclose the fees J.P. Morgan received for the services it performed for Carlyle in the past two years.

60.    Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

61.    The omission of this information renders the statements in the "Fairness Opinion of Morgan Stanley & Co. LLC" and "Fairness Opinion of J.P. Morgan Securities LLC" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act

62.    The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material

information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Wesco will be unable to make a fully-informed decision whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### Count I

**Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder**

63.  Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64.  During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

65.  By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the Company's financial projections, the background of the Proposed Transaction, the data and inputs underlying the financial valuation

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

analyses that support the fairness opinions provided by the Company's Financial Advisors, and potential conflicts of interest faced by the Company's Financial Advisors.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

66.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in making a voting decision on the Proposed Transaction.

67.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

68.     Because of the false and misleading statements in the Proxy Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate.    Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Class Claims Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act

69.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

70.     The Individual Defendants acted as controlling persons of Wesco within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Wesco and participation in and/or

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

71.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

72.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

73.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Company directors had input into.

74.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

75.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Wesco's stockholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Wesco, and against defendants, as follows:

A.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

C.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: September 24, 2019                    **WEISSLAW LLP**

                                             By: _____
                                                 Joel E. Elkins
                                                 9107 Wilshire Blvd., Suite 450
                                                 Beverly Hills, CA 90210
                                                 Telephone: 310/208-2800
                                                 Facsimile: 310/209-2348
                                                      -and-
                                                 Richard A. Acocelli
                                                 1500 Broadway, 16th Floor
                                                 New York, NY 10036
                                                 Telephone: 212/682-3025
                                                 Facsimile: 212/682-3010

                                                 *Attorneys for Plaintiff and the*
                                                 *Proposed Class*

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS